**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**CARLTON FREEMAN** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 5:17-CV-P71-TBR**

**KENTUCKY PAROLE BOARD et al.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motions for summary judgment filed by the two remaining Defendants, Eric Stagner and Yvette McCollum, both of whom argue that Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), and the motion for summary judgment filed by Plaintiff which is, in essence, a response to Defendants' motions for summary judgment.[1] The matters being ripe, the Court will consider the motions.

## I. STATEMENT OF THE CASE

Plaintiff's verified complaint involved alleged events occurring during his stay at a halfway house to which he was released from the Kentucky State Penitentiary on June 25, 2016. After this Court screened the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed to continue claims involving the alleged failures of Defendant Stagner, Plaintiff's parole officer, and Defendant McCollum, the Director of Dismas Charities – St. Patrick Halfway House, to ensure that Plaintiff had his psychiatric medication and to address problems Plaintiff was having with the other St. Patrick residents' use of drugs and threatening behavior. According to

[1] Defendants' motions were filed as motions to dismiss. The Court construed Defendants' motions to dismiss as motions for summary judgment and, although Plaintiff already had filed responses to those motions, the Court ordered Plaintiff to file a response within 30 days guided by Fed. R. Civ. P. 56 (DN 60). In response, Plaintiff filed a motion for summary judgment (DN 61) containing arguments as to why he believes he did "everything to exhaust his remedies."

Plaintiff, he ran away from the halfway house after about a month because of these problems. He was charged with and found guilty of violating the terms of his Sex Offender Conditional Discharge.

## II. ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* A moving party with the burden of proof who seeks summary judgment faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted). The party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'" *Green v. Tudor*, 685 F. Supp. 2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Supreme Court held that exhaustion under the PLRA is an affirmative defense. Therefore, the heightened summary-judgment standard set out above applies to Defendants' motion for summary judgment based on the affirmative defense that Plaintiff failed to exhaust.

***Exhaustion requirement***

Prisoner civil-rights cases are subject to the mandate of the PLRA that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

"[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h). Defendant Stagner argues that Plaintiff, while on parole and living at St. Patrick, was a prisoner for purposes of the PLRA. Plaintiff does not dispute this. The Court agrees that Plaintiff was a prisoner for purposes of the PLRA. *See Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) (holding that a halfway house, which provided drug/alcohol treatment and housing for

some attendees, came within the definition of "any jail, prison, or other correctional facility"); *see also Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (in holding that a county drug treatment facility was a "correctional facility" within the meaning of the PLRA, the Second Circuit opined, "We . . . agree . . . that § 1997e includes within its ambit all facilities in which prisoners are held involuntarily as a result of violating the criminal law."). The issue before the Court, therefore, is whether Plaintiff exhausted his administrative remedies with regard to his claims against Defendants Stagner and McCollum.

***Defendant Stagner***

Defendant Stagner argues in his motion (DN 42) that the Kentucky Department of Corrections (KDOC) has an administrative grievance process allowing inmates to make claims related to conditions of parole and that Plaintiff did not file any grievances. Defendant Stagner attaches his affidavit in which he avers that he was a KDOC parole officer during the time Plaintiff was on Sex Offender Conditional Discharge; that the Offender Handbook is provided to inmates upon release and contains a grievance procedure by which to challenge conditions of parole or a parolee's treatment by probation and parole staff; that Plaintiff received a copy of the Offender Handbook; and that Plaintiff did not file any grievances, ask to speak to Defendant Stagner about filing a grievance, or ask to speak to the district supervisor regarding a grievance.

According to Defendant Stagner's affidavit, the Offender Handbook states in pertinent part that the grievance procedure "begins when you notify your officer that you want to file a grievance. . . . If your officer cannot help you with your problem, ask to speak with the district supervisor. The complete policy on grievances is available from your officer or at one of our offices."

In response, Plaintiff filed a motion requesting admissions from Defendant Stagner (DN 45). Plaintiff asked Defendant Stagner to admit, among other things, that Plaintiff was not given a copy of the Offender Handbook and that, when Plaintiff came to him with problems, Defendant Stagner should have told him to file a grievance or directed Plaintiff to his supervisor. The Court notes that Plaintiff does not attach Defendant Stagner's response to the request for admissions, and the Court assumes that Defendant Stagner did not agree to the request for admissions. Regardless, the grievance procedure provides that to initiate the grievance process, the parole must notify the parole officer that he wishes to file a grievance. Plaintiff also filed a Memorandum (DN 46), in which he states, among other things, that Defendant Stagner never gave him any information on how to file "any complaint for the defendants actions." That Memorandum is not signed under penalty of perjury.[2]

Plaintiff's motion for summary judgment (DN 61), which includes a declaration under penalty of perjury that the information contained in it is true and correct, asserts that he "went to [Defendant] Stagner requesting help in getting his medication and other issues [he] was having at that halfway-house and [Defendant] McCollum and with the residents attacking the plaintiff." He further asserts that he reported Defendant Stagner to his supervisor on July 7, 2016. He adds, "Plaintiff wrote letter after letter to the Kentucky Parole Board about one of there parole officers. These documents . . . are located at the Paducah Federal Courthouse. So the plaintiff did everything to exhaust his remedies."

Defendant Stagner has provided an affidavit that the Offender Handbook is provided to inmates upon release; that it contains a grievance procedure by which to challenge conditions of

[2] That Memorandum also states that Plaintiff "[f]ile in Jefferson County Small Claims Circuit Court and got nowhere." Plaintiff's filing an action in small-claims court does not advance Plaintiff's argument that he exhausted his remedies because small-claims court is not part of the grievance procedure of either KDOC or St. Patrick.

parole or a parolee's treatment by probation and parole staff; that Plaintiff received a copy of the Offender Handbook; and that Plaintiff did not file any grievances or make requests to Defendant or the district supervisor regarding a grievance.

Thus, although Plaintiff asserts that he "went to [Defendant] Stagner requesting help in getting his medication and other issues [he] was having at that halfway-house," Plaintiff does not state that he told Defendant Stagner that he wished to file a grievance about these alleged problems. Further, Plaintiff also states that he reported Defendant Stagner to his supervisor on July 7, 2016, adding, "Plaintiff wrote letter after letter to the Kentucky Parole Board about one of there parole officers. These documents . . . are located at the Paducah Federal Courthouse." However, the Court has examined the attachments to Plaintiff's various documents and has not found a letter to the Kentucky Parole Board regarding grieving Defendant Stagner's actions or inactions.

The Court finds that Defendant Stagner has demonstrated that Plaintiff did not exhaust his administrative remedies. The Sixth Circuit has repeatedly held that an inmate must strictly follow the grievance procedures and that informal letters and petitions are no substitute for a formal inmate grievance. *Shephard v. Wilkinson*, 27 F. App'x 526, 527 (6th Cir. 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (same); *see also Clark v. Beebe*, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (holding that district court erred in finding that prisoner had substantially complied with exhaustion requirement by writing letters to various prison and federal officials even though letter written to U.S. Attorney's Office eventually made

its way to the warden of plaintiff's prison). Thus, whatever informal complaints Plaintiff may have lodged did not relieve him of his duty to comply with the specific requirements set forth in the Offender Handbook. *See Bruin v. Meko*, No. 14-CV-57-HRW, 2015 WL 1061578, at *5, (E.D. Ky. Mar. 10, 2015) ("Letters and petitions are . . . no substitute for a formal inmate grievance."). The Court will grant Defendant Stagner's motion based on Plaintiff's failure to exhaust and dismiss the claims against Defendant Stagner without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

***Defendant McCollum***

With regard to exhaustion, Defendant McCollum's motion (DN 47) argues that on June 25, 2016, Plaintiff was released from prison to Dismas Charities Inc.'s Community Correction Center, commonly referred to as "St. Patrick." She argues that St. Patrick maintains a grievance policy for residents and that residents are made aware of this policy when they arrive. She states that the policy is also posted in the facility. She argues that, while at St. Patrick, Plaintiff never filed a grievance concerning the allegations of the complaint before he was terminated from the program on July 30, 2016.

Defendant McCollum attaches her affidavit in which she avers that she is the St. Patrick Director; that St. Patrick maintains a grievance policy, which is posted and which residents are made aware of when arriving; that Plaintiff never filed a grievance while at St. Patrick concerning lack of medical care, requests for medication, or threats or physical harm; and that Plaintiff was terminated from the program on July 30, 2016. Attached to the affidavit are a termination letter for Plaintiff signed by Defendant McCollum and a copy of the Grievance Procedure.

The Grievance Procedure provides in pertinent part that the first step is "submitting an electronic Action request via the Resident Kiosk to the Director stating the problem . . . . This must be done within 24 hours of not resolving the issue with your counselor or, if it involves your counselor, within 24 hours of the issue." According to the procedures, the "first word of that message must be 'Grievance.'" The Grievance Procedure also provides that the complaint will be investigated and responded to within 48 hours and that if "this does not resolve the issue, the Director will formally meet with you to discuss the findings and what resolution, if any, will be implemented." If still not satisfied, the resident can "file a formal grievance with the Corporate Office (via letter) or Department of Corrections through the assigned Parole Officer."

Plaintiff asserts in his motion for summary judgment that he "went to the residents computer to file a[n] electronic action request via the residents kiosk computer to state the problem with my medication and the problems the plaintiff was having with the residents." He explains: "Tried to get those records for the court by subpoenas filed twice through the Jefferson Co. Circuit Court Clerk Office and got no help."

Plaintiff attaches as an exhibit a copy of the "Halfway House Grievance Procedure" (DN 47-3). Plaintiff has handwritten on that procedure regarding the Resident Kiosk the following:

> This is the residents computer to where residents at that Dismas Charities inc. Halfway-house can contact the staff or request to do something. These is the information I could not obtain with my own info for the court because of red tape by the state. (For the Court. All of the info you need is on that residents computer!).

Also, on that Grievance Procedure is the following handwritten note, stating in pertinent part: "I did come to Mr. Eric Stagner my parole officer about problem and he did nothing." This notation is next to the portion of the policy that states that if the resident does not agree with the

action of the Director, a formal grievance can be filed with the "Corporate Office (via letter) or Department of Corrections through the assigned Parole Officer."

Defendant McCollum has provided her affidavit averring that St. Patrick maintains a grievance policy, which is posted and which residents are made aware of when arriving, and that Plaintiff never filed a grievance while at St. Patrick concerning lack of medical care, requests for medication, or threats or physical harm. The Grievance Procedure, attached to the affidavit, provides that the first step is "submitting an electronic Action request via the Resident Kiosk" with the "first word . . . 'Grievance.'" The Grievance Procedure also provides that the complaint will be investigated and responded to within 48 hours and that if "this does not resolve the issue, the Director will formally meet with you to discuss the findings and what resolution, if any, will be implemented." If still not satisfied, the resident can "file a formal grievance with the Corporate Office (via letter) or Department of Corrections through the assigned Parole Officer."

Although Plaintiff asserts that he "went to the residents computer to file a[n] electronic action request via the residents kiosk computer to state the problem with my medication and the problems the plaintiff was having with the residents," he does not state that the first word of that message was "Grievance." Nor does he state that he went to the kiosk within 24 hours of either not resolving the issue with his counselor or of the occurrence of the issue. The Court concludes that Defendant McCollum, by affidavit and other supporting documentation, has shown that Plaintiff has failed to exhaust his available administrative remedies because he did not initiate that process.

Moreover, to exhaust his administrative remedies, a prisoner must pursue all available procedural steps in the administrative process, including all available appeals. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). A prisoner may not abandon the process before

completion and then claim that he exhausted his remedies or that it is now futile for him to do so. *See Hartsfield v. Viddor*, 199 F.3d 305, 309 (6th Cir. 1999). Thus, even if the Court were to interpret Plaintiff's assertion that he went to the electronic kiosk as having initiated the grievance procedure against Defendant McCollum, he does not argue that he completed the grievance procedure by formally meeting with the Director and then filing a formal grievance.

As explained above, there is no genuine dispute of material fact that Plaintiff did not exhaust his available administrative remedies as § 1997e(a) requires regarding his claims against Defendant McCollum. Therefore, the Court will dismiss the claims against Defendant McCollum without prejudice as well.

## III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motions (DNs 42 and 47) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion (DN 61) is **DENIED**.

The Court will enter a separate Judgment.

Date: August 27, 2018

Thomas B. Russell

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Counsel of record
4413.009